UNITED STATES of America, Plaintiff,

v.

Antonio Lamont GUNN, and Collins Kusi Sakyi, Defendants.

Criminal Action No. 97–181–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 24, 1997.

Helen F. Fahey, United States Attorney, Elizabeth A. Jex, Special Assistant United States Attorney, Alexandria, VA, for U.S.

Robert Stanley Powell, Arlington, VA, for Defendant Sakyi.

Frank Salvato, Alexandria, VA, for Defendant Gunn.

## MEMORANDUM OPINION

ELLIS, District Judge.

This is a prosecution of two defendants arrested after a routine traffic stop resulted in the discovery of drugs and a firearm. Both defendants filed pretrial severance and suppression motions, which motions presented two questions of special significance:

(1) whether a police officer may conduct a pat-down search on any passenger lawfully ordered to exit a vehicle after a traffic stop or whether the validity of such a search requires reasonable, articulable suspicion based on the totality of the circumstances; and

(2) whether a charge of weapon possession by a felon should be severed from other charges because of the "spillover" prejudicial effect on the other charges of disclosing to the jury that defendant has a prior felony conviction.

## I

The pertinent facts are easily and briefly summarized. While patrolling in the early evening of April 2, 1997, Officer Frank Ferstl, a uniformed member of the U.S. Park Police, observed a brown Plymouth traveling southbound on the George Washington Parkway with a defective left brake light. Officer Ferstl followed the Plymouth briefly to confirm that the brake light was not working. Then, at the exit to Belle Haven Road, he pulled the vehicle over to issue the driver a traffic citation. Safety concerns prompted him to approach the vehicle on the passenger's side. There, he asked the driver, defendant Antonio Lamont Gunn, for his license and registration. In response, Gunn informed Officer Ferstl that he had forgotten his license, that the Plymouth actually belonged to his girlfriend who had loaned it to him, and that the vehicle title was in the glove compartment. When Gunn opened the passenger's side glove compartment to retrieve the title, Officer Ferstl, from where he was standing, noticed a Phillies Blunt cigar box in plain view. Officer Ferstl considered this fact to be significant because, in his six and one half years of experience as a U.S. Park Police Officer, he had frequently observed that Phillies Blunt cigar boxes were used with marijuana.[1] As he handed the vehicle title to Officer Ferstl, Gunn told Officer Ferstl his name, date of birth, and social security number. Then, Officer Ferstl asked Gunn about the status of his license. In response, Gunn contradicted his earlier statement, noting that he had never obtained a license.

Now certain that Gunn could not drive the vehicle away from the scene, Officer Ferstl asked Gunn's passenger, defendant Collins Kusi Sakyi, whether he had a valid driver's license. Sakyi replied that he did, but did not have it with him at that time. Sakyi also told Officer Ferstl that his name was Michael Sakyi, that he was born on May 2, 1968, and that his social security number was 230–53–9492. This information proved to be false, although Officer Ferstl did not learn this until later.

Officer Ferstl then radioed this information to the U.S. Park Police communications center and requested a computer check of Gunn's driving status. While waiting for the requested information, Officer Ferstl asked Gunn to step out of the vehicle. Officer Ferstl queried Gunn about whether the Plymouth contained any contraband. Gunn promptly responded that "[t]here isn't any." Officer Ferstl again asked that question, and Gunn offered the same reply. Following this exchange, the communication center verified what Officer Ferstl had suspected, namely that Gunn's license had been revoked. Officer Ferstl then arrested Gunn for operating a vehicle on a revoked license and placed him in the rear of his cruiser.

At about this time, U.S. Park Police Lieutenant David H. Stover arrived on the scene. While Lieutenant Stover kept his eye on Gunn, Officer Ferstl asked Sakyi to exit the Plymouth so that the vehicle could be searched incident to Gunn's arrest. Sakyi readily cooperated. Before conducting the vehicle search, Officer Ferstl proceeded to subject Sakyi to a pat-down search for weapons. According to both Officer Ferstl and Lieutenant Stover, as Officer Ferstl patted Sakyi down, a piece of tin foil fell from Sakyi's right pant leg onto the ground. Suspecting that the tin foil contained "crack" cocaine, Officer Ferstl opened it and observed a white rock-like substance, which he believed (and tests later confirmed) was crack cocaine. Sakyi was then placed under arrest and put in the cruiser.

Officer Ferstl then searched the Plymouth and recovered an unloaded Remington Viper .22 caliber rifle from the trunk. When Officer Ferstl brought the weapon to his cruiser, both Gunn and Sakyi volunteered that the rifle was a BB gun. After securing the rifle in his trunk, Officer Ferstl transported Gunn and Sakyi to the Fairfax County Police Station at Mt. Vernon for processing. There, Officer Ferstl advised both Gunn and Sakyi of their *Miranda* rights, and they both elected to answer his questions. A subsequent computer search at the station disclosed Gunn's prior felony conviction for possession of cocaine with intent to distribute.

---

**1.** Specifically, Officer Ferstl testified during the evidentiary hearing that he had been involved in hundreds of cases where the outer layer of Phil-lies Blunt cigars was used to roll marijuana cigarettes.

On April 24, 1997, a federal grand jury returned a three count indictment charging Gunn with three offenses and Sakyi with one. Specifically, Gunn was charged with: (i) possession with intent to distribute 5 grams or more of crack cocaine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count I); (ii) possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g) (Count II); and (iii) operating a motor vehicle after revocation, in violation of 36 C.F.R. § 4.2, assimilating Va. Code § 46.2–301 (Count III). Sakyi was charged only in Count I with aiding and abetting the drug trafficking violation.

Both defendants filed pretrial motions. Both filed separate motions to sever their joint trial on the ground that joinder would result in prejudice under Rule 14, Fed. R.Crim.P. In his motion, Sakyi contends that evidence of Gunn's prior felony conviction under Count II would unfairly prejudice the jury's consideration of Count I, while Gunn argues that Sakyi's allegedly inculpatory statements concerning the charges against Gunn would impair his ability to obtain a fair trial. Further, Gunn seeks to sever Count II from Counts I and III pursuant to Rules 8(a) and 14, Fed.R.Crim.P. In particular, Gunn asserts that the felon possessing a firearm count is not sufficiently related to the other counts and that, in any event, the inevitable introduction of prior crimes evidence would create undue prejudice. Finally, both Gunn and Sakyi independently sought to suppress evidence and statements related to their arrest by Officer Ferstl. Oral argument on the motions was heard on June 9, 1997, after which Sakyi's motion to suppress and the motions to sever were taken under advisement, Gunn's motion to suppress was denied, and the parties were directed to submit supplemental authority. *United States v. Gunn and Sakyi,* Crim. No. 97–181–A (Order, June 9, 1997). The parties complied, and the outstanding motions were resolved by Order dated June 18, 1997. *United States v. Gunn and Sakyi,* Crim. No. 97–181–A (Order, June 18, 1997). Specifically, Gunn's motion to sever Count II was granted, Gunn's and Sakyi's motions to sever their joint trial were denied, and Sakyi's motion to suppress all evidence seized as a result of Officer Ferstl's pat-down was also denied. This Memorandum Opinion elaborates on these rulings.

## II

In his motion to suppress, Sakyi contends that Officer Ferstl was not justified in conducting the pat-down that ultimately uncovered the tin foil containing "crack" cocaine. In particular, Sakyi maintains that he cooperated fully and that Officer Ferstl lacked the reasonable suspicion necessary to "frisk" him for weapons. The government counters that the "totality of the circumstances" supported Officer Ferstl's decision to search Sakyi.

The principles dispositive of this dispute are well-established. In *Whren v. United States,* —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Supreme Court recently confirmed that probable cause to believe that a routine automobile violation has occurred justifies a traffic stop. As a general rule, an ordinary traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660 (1979). But since a traffic stop is a limited seizure, more akin to an investigative detention than a custodial arrest, the reasonableness of such a stop is assessed under the precepts of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3149–50, 82 L.Ed.2d 317 (1984); *United States v. Rusher,* 966 F.2d 868, 875 (4th Cir.), *cert. denied,* 506 U.S. 926, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992).

Specifically, *Terry* commands that a police officer have a reasonable suspicion, based on articulable facts, that criminal activity is afoot. *Terry,* 392 U.S. at 29, 88 S.Ct. at 1883–84; *see also United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *United States v. Crittendon,* 883 F.2d 326, 328 (4th Cir.1989). And during the brief stop, the officer may conduct a limited, protective search for weapons provided he has articulable suspicion to believe that the detained individual is armed and dangerous. *See Terry,* 392 U.S. at 30, 88 S.Ct. at 1884–85; *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). But a "stop and frisk," as such an event is commonly called, must not be based on subjective hunches, because the

Fourth Amendment demands "some minimal level of objective justification to validate the detention or seizure." *INS v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984); *see also Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *Adams,* 407 U.S. at 146, 92 S.Ct. at 1923; *Michigan v. Long,* 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983). The quantum of articulable, reasonable suspicion required, however, is less than that required for probable cause. *Sokolow,* 490 U.S. at 7, 109 S.Ct. at 1585 (citing *United States v. Montoya de Hernandez,* 473 U.S. 531, 541, 105 S.Ct. 3304, 3310–11, 87 L.Ed.2d 381 (1985)). But significantly, courts assessing the validity of a *Terry* "stop and frisk," like courts assessing probable cause, must consider "the totality of the circumstances." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). Thus, factors to be considered when determining whether a stop violated the Fourth Amendment include: an area's crime rate; the nature of the questionable activity observed; the time of day; any suspicious behavior of the suspect; and the practical experience of officers involved in the stop. *United States v. Lender,* 985 F.2d 151, 154 (4th Cir.1993); *United States v. Bull,* 565 F.2d 869, 871 (4th Cir.1977), *cert. denied,* 435 U.S. 946, 98 S.Ct. 1531, 55 L.Ed.2d 545 (1978).

These principles applied here compel the conclusion that Officer Ferstl's frisk of Sakyi was within Fourth Amendment bounds. Although Sakyi appropriately concedes that Officer Ferstl legally ordered him to step out of the Plymouth's passenger's seat,[2] Sakyi nonetheless contends that Officer Ferstl lacked the reasonable suspicion necessary to justify the pat-down. As support, Sakyi cites the Third Circuit's recent decision in *United States v. Moorefield,* 111 F.3d 10 (3d Cir.

1997). There, the Third Circuit held that the passenger's "attempt to exit the car," "furtive hand movements," and "refusal to obey the officers' orders" fully justified the officer's limited pat-down for weapons. Here, Sakyi argues, Officer Ferstl had no reason to be similarly suspicious of him; in contrast to Moorefield, Sakyi patiently sat in the Plymouth, made no surreptitious gestures, and heeded Officer Ferstl's every instruction. As a consequence, Sakyi contends that *Terry* is inapposite in the circumstances and that the only legal basis for tolerating Officer Ferstl's frisk would be to adopt a bright-line, *per se* rule permitting police officers to pat-down any and every passenger of a vehicle stopped for a traffic infraction.

This contention is unpersuasive; such a *per se* rule is neither necessary nor appropriate. Quite apart from the Supreme Court's sensible caution about such rules in the Fourth Amendment context,[3] the facts here amply support an objective basis for reasonable, articulable suspicion that Sakyi might be involved in illegal activity.

First, Officer Ferstl knew that there was a high incidence of drug trafficking and use in the area where he had stopped defendants. Officer Ferstl also noticed the Phillies Blunt box in the vehicle's glove compartment box, which based on his considerable experience, signaled the existence of marijuana. These facts alone would prompt a reasonable officer to suspect possible drug crimes. Indeed, drug crimes were precisely what Officer Ferstl suspected. Events that followed only fueled this suspicion. Officer Ferstl asked Sakyi for identification, but he had none. Moreover, Sakyi wore baggy clothes, which could have concealed a weapon.[4] The totality of these facts and circumstances plainly gave rise to articulable, reasonable suspicion that

2. *See Maryland v. Wilson,* — U.S. —, —, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997) (holding that the bright-line rule of *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), which permitted police officers to order drivers to exit their vehicles in the course of a traffic stop, also extended to passengers).

3. The Supreme Court has "generally eschewed bright-line rules in the Fourth Amendment context." *Wilson,* — U.S. at — n. 1, 117 S.Ct at 885 n. 1 (citing *Ohio v. Robinette,* — U.S. —, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)). While the Court has adopted *per se* rules on occasion,

most notably in *Mimms* and *Wilson,* this fact alone does not necessarily support the creation of such a convention here. *But see United States v. Stanfield,* 109 F.3d 976, 981 (4th Cir.1997) (creating a bright-line, *per se* rule that "whenever, during a lawful traffic stop, officers are required to approach a vehicle with windows so heavily tinted that they are unable to view the interior of the stopped vehicle, they may, when it appears in their experienced judgment prudent to do so, open at least one of the vehicle's doors" to visually inspect its interior).

4. *See United States v. Edmonds,* 948 F.Supp. 562, 565 (E.D.Va.1996) (upholding a police officer's

Sakyi might have been engaged in some sort of criminal activity. In the final analysis, Officer Ferstl's pat-down of Sakyi fell squarely within *Terry* and its progeny. Accordingly, the motion to suppress was denied.

### III

Rule 8(a), Fed.R.Crim.P., permits the joinder of multiple offenses if they are sufficiently related,[5] whereas Rule 8(b), Fed.R.Crim.P., allows the joinder of multiple defendants who have taken part in the same offense.[6] But Rule 14, Fed.R.Crim.P., recognizes that joinder, even when proper under Rule 8(a) or (b), may, nonetheless, unfairly prejudice a defendant.[7] *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 936–37, 122 L.Ed.2d 317 (1993); *United States v. Stone*, 826 F.Supp. 173, 173–74 (W.D.Va. 1993). The burden of establishing that the joinder would be so unfairly prejudicial that a miscarriage of justice would result falls on the defendant. *United States v. Brugman*, 655 F.2d 540, 542–43 (4th Cir.1981). And, in this regard, generalized allegations of undue prejudice will not suffice. *United States v. Sandini*, 888 F.2d 300, 308 (3d Cir.1989). The decision to sever is one within the broad discretion of the district court, *Zafiro*, 506 U.S. at 539, 113 S.Ct. at 938; *United States v. Odom*, 888 F.2d 1014, 1017 (4th Cir.1989), *cert. denied*, 498 U.S. 810, 111 S.Ct. 44, 112 L.Ed.2d 21 (1990), which "must balance any possible prejudice to the accused against the interest of the efficient administration of justice." *United States v. Cole*, 857 F.2d 971, 974 (4th Cir.1988), *cert. denied*, 489 U.S. 1070, 109 S.Ct. 1351, 103 L.Ed.2d 819 (1989).

Measured against this standard, Gunn's claim for severance of Count II has merit on Rule 14 grounds but not on Rule 8 grounds. Gunn's contention that Count II is insufficiently related to Count I for the purpose of joinder under Rule 8(a) is unpersuasive. Although Gunn contends that the government failed to show precisely how the charged offenses were related, the three charges may plausibly be viewed as part and parcel of a common plan or scheme to possess and distribute contraband in the Northern Virginia area.[8]

Gunn's Rule 14 claim is more convincing. In particular, Gunn maintains that proof of his felony conviction, which is relevant only to the weapon possession charge, would taint the jury's deliberation of the aiding and abetting charge, thereby depriving him of his right to a fair trial. Since evidence that Gunn is a felon for purposes of proving that specific element of Count II would not be admissible at a separate criminal trial on Count I,[9] there is a manifest danger of prejudice to Gunn stemming from the government's appropriate introduction of prior crimes evidence in a joint trial. Put another way, non-severance would heighten the risk that the jury would make an improper inference concerning Gunn's criminal propensity. While there is no *per se* rule requiring the severance of ex-felon counts, numerous courts have permitted it in these circumstances. *See, e.g., United States v. Jones*, 16 F.3d 487, 492–93 (2d Cir.1994); *United States v. Dockery*, 955 F.2d 50, 53 (D.C.Cir.1992); *United States v. Desantis*, 802 F.Supp. 794, 803 (E.D.N.Y.1992). And

decision to conduct a limited, non-intrusive search for weapons when defendant's loose-fitting tee-shirt could have concealed a weapon without a "tell-tale bulge").

5. Rule 8(a), Fed. R.Crim.P., provides that multiple offenses may be charged in the same indictment if they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

6. Rule 8(b), Fed.R.Crim.P., provides that multiple defendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."

7. Rule 14, Fed.R.Crim.P., provides, in pertinent part, that:

   If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

8. *See United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir.1987) ("[N]arcotics-related and weapon-related charges may be joined [when they are] sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan.").

9. Such evidence of Gunn's prior crimes would be irrelevant and, hence, inadmissible under Rule

while judicial economy would be somewhat impaired if the instant motion to sever were granted, the likelihood of prejudice to Gunn if his motion were denied would be much greater. Accordingly, the motion to sever Count II was granted.

The other aspects of defendants' motions to sever are now moot. As for Sakyi's motion to sever his trial under Rule 14, Fed. R.Crim.P., the ruling granting Gunn's motion to sever Count II sufficiently satisfies his concern about being tried with Gunn, a convicted felon. Since Sakyi's distress stemmed solely from the prejudicial effect of Count II and that offense has now been cleaved, the basis for his motion has dissipated. As for Gunn's motion to sever his trial from Sakyi's because of Sakyi's admissions, the parties have since agreed to redact those statements by Sakyi that tend to inculpate Gunn. This solution forecloses Gunn's contention that the use of Sakyi's confession would run afoul of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which held that the use of a defendant's confession that also implicates a co-defendant at their joint trial breaches the Confrontation Clause. Here, the government's willingness to redact the inculpatory statements of Sakyi against Gunn settles the matter.[10] In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Supreme Court held that the redaction of references to a defendant's name in a nontestifying co-defendant's confession satisfied the requirements of the Confrontation Clause and, hence, the dictates of *Bruton*. Accordingly, defendants' motions to sever their joint trial were denied as moot.

An appropriate Order has issued.

The Clerk is directed to send copies of this Memorandum Opinion to all counsel of record.

---

404(b), Fed.R.Evid. That particular provision provides, in pertinent part, that: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

**10.** In his supplemental memorandum, Gunn expressed concern about one paragraph of the re-

dacted statement. Finding good cause to do so, the government was directed to delete the reference in paragraph 28 to Gunn and the crack dealer who sold drugs to Sakyi. *United States v. Gunn and Sakyi*, Crim. No. 97–181–A (Order, June 19, 1997).