29 A.3d 569

**Christopher MANSFIELD**

v.

**STATE of Maryland.**

**No. 53, Sept. Term, 2010.**

Court of Appeals of Maryland.

Sept. 30, 2011.

---

Renee M. Hutchins (University of Maryland School of Law, Baltimore, MD), on brief, for Petitioner.

Brenda Gruss, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J. HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BELL, C.J.

## I.

The petitioner, Christopher Mansfield, was tried in a bench trial at the Circuit Court for Caroline County on five counts,

charging statutory sex related offenses,[1] arising out of his

---

1. Christopher Mansfield, the petitioner, was charged with violating Maryland Code (2002) § § 3–203, 3–304(a)(3), 3–306(a)(3), 3–307(a)(3) and 3–308 of the Criminal Law Article. The trial judge granted the petitioner's motion for judgment of acquittal with respect to the counts charging sexual offense in the third degree, § 3–307, and sexual offense in the fourth degree, § 3–308.

As to the remaining charges, the statutes provide:

"§ 3–304, Rape in the second degree:

"(a) *Prohibited.*—A person may not engage in vaginal intercourse with another:

"(1) by force, or the threat of force, without the consent of the other;

"(2) if the victim is mentally defective individual, a mentally incapacitated individual, or a physically helpless individual, and the person performing the act knows or reasonably should know that the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual; or

"(3) if the victim is under the age of 14 years, and the person performing the act is at least 4 years older than the victim.

"(b) *Penalty.*—A person who violates this section is guilty of the felony of rape in the second degree and on conviction is subject to imprisonment not exceeding 20 years."

"§ 3–306, Sexual offense in the second degree:

"(a) *Prohibited.*—A person may not engage in a sexual act with another:

"(1) by force, or the threat of force, without the consent of the other;

"(2) if the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual, and the person performing the sexual act knows or reasonably should know that the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual; or

"(3) if the victim is under the age of 14 years, and the person performing the sexual act is at least 4 years older than the victim...."

"(b) *Penalty.*—A person who violates this section is guilty of the felony of sexual offense in the second degree and on conviction is subject to imprisonment not exceeding 20 years."

"§ 3–203. Assault in the second degree

"(a) *Prohibited.*—A person may not commit an assault.

"(b) *Penalty.*—Except as provided in subsection (c) of this section, a person who violates subsection (a) of this section is guilty of the misdemeanor of assault in the second degree and on conviction is subject to imprisonment not exceeding 10 years or a fine not exceeding $2,500 or both.

"(c) *Law enforcement officer.*

"(1) In this subsection, 'physical injury' means any impairment of physical condition, excluding minor injuries.

alleged sexual assault of a minor years earlier. At the close of all of the evidence, the petitioner having testified in his own defense, the trial judge, *sua sponte* and over the petitioner's objection, "declare[d] a mistrial on herself," intending to set the case in for a new trial before another judge. This decision was upheld by both the motions judge, from whom the petitioner initially sought relief, in the form of dismissal of the indictment on the ground of double jeopardy, and by the Court of Special Appeals, to which he appealed the adverse rulings.[2] This Court granted the petitioner's petition for writ of certiorari to determine whether, under the facts and circumstances *sub judice*, there was "manifest necessity" for the trial judge's declaration of mistrial, thus permitting the petitioner's retrial.

Before the start of this trial, the petitioner had been convicted in two separate, unrelated cases of sexual offenses involving young women who were minors, "under the age of 17

---

"(2) A person may not intentionally cause physical injury to another if the person knows or has reason to know that the other is:
"(i) a law enforcement officer engaged in the performance of the officer's official duties; or
"(ii) a parole or probation agent engaged in the performance of the agent's official duties.
"(3) A person who violates paragraph (2) of this subsection is guilty of the felony of assault in the second degree and on conviction is subject to imprisonment not exceeding 10 years or a fine not exceeding $5,000 or both."

**2.** The appeal is timely. *Bunting v. State,* 312 Md. 472, 477–78, 540 A.2d 805, 807 (1988) ("[A] defendant may take an immediate appeal from the denial of a motion to dismiss on the ground of double jeopardy."); *Cornish v. State,* 272 Md. 312, 316, n. 1, 322 A.2d 880, 883, n. 1 (1974) ("[T]he denial of a motion to dismiss an indictment on the ground of double jeopardy is immediately appealable, and the defendant need not await the outcome of his retrial before taking an appeal."); *See State v. Crutchfield,* 318 Md. 200, 205, 567 A.2d 449, 451 (1989); *Russell v. State,* 310 Md. 96, 98 n. 1, 527 A.2d 34, 34 n. 1 (1987); *Robinson v. State,* 307 Md. 738, 741 n. 2, 517 A.2d 94, 96 n. 2 (1986); *Huffington v. State,* 302 Md. 184, 187 n. 2, 486 A.2d 200, 202 n. 2 (1985); *Evans v. State,* 301 Md. 45, 49 n. 2, 481 A.2d 1135, 1137 n. 2 (1984); *Bowling v. State,* 298 Md. 396, 401 n. 4, 470 A.2d 797, 799 n. 4 (1984); *In re Mark R.,* 294 Md. 244, 246 n. 2, 449 A.2d 393, 395 n. 2 (1982).

or 16." Those judgments of conviction were being appealed at the time. The trial judge was aware of these convictions and, as to at least one of them, so too were the prosecutor and defense counsel. Indeed, the trial judge had presided over one of the unrelated sexual offense cases, a jury trial, in which both the prosecutor and defense counsel in this case had participated. In addition, she was aware of the other case involving a different minor, which had been presided over by a retired, recall judge. These convictions were not discussed prior to trial; although she mentioned the convictions during the trial, after jeopardy had attached, thereby acknowledging that she was aware of them, the trial judge did not mention them before jeopardy attached.

Prior to trial, it was clear that the complaining witness had not reported the sexual offenses she accused the petitioner of committing promptly or within a reasonable time of their commission. The charging documents alleged that the offenses occurred in 2005 but that they were not reported by the complaining witness until 2008. In fact, in preliminary discussions of the case, the State advised the trial judge that the complaining witness had not reported immediately the sexual offenses lodged against the petitioner and that it expected her to testify that, nearly three years after the event, after she heard a sermon at the church she attended, she decided to come forward with the sexual assault allegations against the petitioner. The State also apprised the court that it intended to call five other witnesses, none of whom had personal knowledge of the alleged offenses or would provide forensic evidence.

For the defense, defense counsel informed the court that it intended to call the petitioner, and only the petitioner, to testify. Moreover, during its brief opening statement, the defense made clear what its defense would be and what the petitioner would testify to, that the alleged incident "did not happen."

As expected, consistent with the preliminary discussions, the State's case consisted of the complaining witness, her mother, a former friend to whom it was alleged the complain-

ing witness related the sexual offense during the summer in which it occurred and three other witnesses.[3] The complaining witness testified that she had been sexually assaulted by the petitioner, a friend of the family, in August of 2005, when she was thirteen years old and that she reported the incident in 2008. She explained the circumstances: the petitioner had been hired by her parents to do work on the family's house, which was located next to the trailer where the family resided. After she delivered the glue that the petitioner had requested, she said that the petitioner asked her whether she had ever had sex. When she did not respond, the complaining witness testified that the petitioner told her that, unless she had sex with him, he would tell her parents that she was sexually active. She concluded that, after she had performed fellatio on the petitioner for a brief time, she and the petitioner engaged in sexual intercourse.

The complaining witness's mother testified that, in May of 2005, the petitioner was hired to redo the family's kitchen but quit, without notice, before completing the job. She further testified that, after a June 2008 meeting with her husband, their pastor, two former youth leaders, and the complaining witness, at which the complaining witness first alleged that she had been raped by the petitioner in the summer of 2005, she then went to the police to report the incident. The complaining witness's former friend was offered to corroborate her testimony that the sexual assault occurred. She testified that the complaining witness told her, during the

---

**3.** The other State's witnesses were: a police trooper, a former youth leader at the church attended by the complaining witness, and the pastor of that church. The trooper testified that on June 30, 2008, the complaining witness's mother came forward to report that her daughter had been raped. Through her investigation, the trooper testified that she was able to determine the "date or timeline"—August 22, 2005 through August 27, 2005—of the alleged rape. The former youth leader testified that, in June of 2008, after hearing a sermon, the complaining witness informed her that she had been raped by the petitioner the summer that the petitioner worked on her family's home. The pastor provided similar testimony—that the complaining witness, on the same day as reported by the former youth leader, alleged that she had been raped by the petitioner in the summer of 2005.

summer in which it allegedly occurred, that the complaining witness had "sex with the guy that was working on the house." She also said that the complaining witness did not say "it was rape or anything." None of the State's other witnesses had any knowledge of the alleged offense until some years later.

The subject of the petitioner's prior sexual convictions was brought up three times, each time by the trial judge, before the defense presented its case. During the testimony of the complaining witness, the trial judge inquired whether the complaining witness and her parents had ever discussed "the fact that [the petitioner] had been charged in two other cases involving alleged rape." Subsequently, she asked the complaining witness's mother directly, whether she was aware of the "other allegations involving" the petitioner and whether she had "any recollection of having conversations about [the] allegations" involving petitioner. Finally, prior to the petitioner being called to give testimony, the trial judge asked the State if it intended to use the petitioner's two prior sexual convictions to impeach his testimony.[4]

When the petitioner took the witness stand, he testified as counsel, in opening statement, said he would: he denied ever having sexual contact with the complaining witness. He did, on the other hand, corroborate the complaining witness's testimony that, in August 2005, he was engaged to, and did, perform repairs to the complaining witness's family home.

At the close of the evidence and after a brief recess, the trial judge, over the petitioner's objection, *sua sponte* declared a mistrial. She explained, first, "the dilemma that I have":

---

**4.** Because the convictions were on appeal, they could not be used, unless the petitioner "opened a door during his testimony." *See Clark v. State*, 332 Md. 77, 84–85, 629 A.2d 1239, 1240 (1993) ("The 'opening the door' doctrine is really a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant in order to respond to (1) admissible evidence which generates an issue, or (2) inadmissible evidence admitted by the court over objection. Generally, 'opening the door' is simply a contention that competent evidence which was previously irrelevant is now relevant through the opponent's admission of other evidence on the same issue.") For that reason, the State indicated that it did not intend to raise them.

"This case basically comes down to a he said/she said situation and if one chooses to believe [the complaining witness's] version of what happened, which was certainly credible, then a fact finder can make a finding beyond a reasonable doubt that [the petitioner] is guilty. Now if the fact finder elects not to believe [the complaining witness] and finds [the petitioner's] version more credible, then the Court would then have to return a verdict for, of not guilty. This is the dilemma that this Court has. Not placed into evidence, either by way of an impeachable conviction or evidence if admissible of other past wrong acts, this Court has knowledge that [the petitioner] has two convictions, sexual-related convictions involving young women under the age of 17 or 16. I did the first case .... and Judge Cal Sanders did the second case...."

Then she explained why she believed that it—her knowledge of the petitioner's prior convictions and the partiality it engendered—made it manifestly necessary for her to declare a mistrial:

"I cannot extract out of my brain and my analysis of whether to believe [the petitioner] what I know from those other two cases. Now had there been other evidence in this case, forensic evidence, if, if perhaps [the complaining witness] had made a, a prompt report of the sexual assault, if [the petitioner] had made a statement in admission, all those things would alter my decision today, but I'm basically left as a fact finder for deciding who I'm going to believe just based upon their testimony. And it's a moral dilemma to me and I told counsel I don't take this lightly.... [I]f this had been a jury trial, I wouldn't be in this dilemma, cause the jury's the fact finder, not the Court. I'm the fact finder and I'm not able to do it, knowing what I know about [the petitioner]. So that's why I'm declaring a mistrial...."

The petitioner subsequently moved to dismiss the indictment on double jeopardy grounds. He argued that "there was not manifest necessity for the granting of the mistrial where [the trial judge] had knowledge of the prior [sexual assault] cases well before the trial began." The motion's judge denied

the petitioner's motion. Relying on this Court's decision in *Cornish v. State*, 272 Md. 312, 322 A.2d 880 (1974), he concluded that the trial judge "had no choice but to declare a mistrial" once she had "perceived that the trial of [the] case could not proceed because of some prejudice to" the petitioner. According to the motions judge, it is inconceivable that the trial judge could have known, prior to jeopardy attaching, that, to resolve the case, she would be required to weigh the credibility of the complaining witness against that of the petitioner, that the case would devolve into, in the words of the trial judge, a "he said/she said situation." He elaborated:

> "[The trial judge] had no way of knowing how this case was going to proceed. She could not know in advance what the victim was going to say. She could not know in advance that the Defendant might take the stand. And she certainly could not know in advance that this case would come down to what she determined to be a question of credibility of two witnesses. And only that. [A]pparently there was no other evidence, DNA or scientific evidence to establish . . ., one way or the other . . ., the guilt or innocence of the Defendant."

The Court of Special Appeals, in an unreported opinion, affirmed the lower court's ruling. The intermediate appellate court agreed with the petitioner "that an alternative in this case would have been a recusal prior to the attachment of jeopardy." Nevertheless, chiding the petitioner for "improperly focus[ing] on the process rather than the result," it rejected his argument in other respects. The Court of Special Appeals reasoned that, knowing that the information she possessed about the petitioner's earlier convictions would be to his "detriment," the trial judge "was unable to see any other alternative to a mistrial." It also was persuaded that a mistrial was necessary because "the public's confidence in the rule of law would be harmed . . . by having a partial judge decide [the] case. . . ."

The petitioner sought certiorari review of the Court of Special Appeals' decision. We granted his petition, *Mansfield v. State*, 415 Md. 40, 997 A.2d 791 (2010), to determine

whether, where a trial judge, over defense counsel's objection and on the basis of information known by the judge prior to trial, declares a mistrial at the conclusion of all of the evidence in a bench trial, the constitutional prohibition against double jeopardy is excused by the doctrine of manifest necessity.[5] We shall hold that it is not, that the constitutional prohibition against double jeopardy remains applicable under such circumstances. Accordingly, we shall reverse.

## II.

The Fifth Amendment to the United States Constitution[6] contains a Double Jeopardy Clause. That clause, like the Amendment itself, *see Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), is made applicable to State criminal prosecutions through the Fourteenth amendment. *See Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969) (holding that "the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment"); *Purnell v. State*, 375 Md. 678, 691, 827 A.2d 68, 75 (2003) ("The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides the criminally

---

**5.** In his Petition for a Writ of Certiorari, the petitioner presented the following question: "Whether the constitutional prohibition against double jeopardy is excused by the doctrine of manifest necessity where a trial judge elects to declare a mistrial at the conclusion of a bench trial over defense counsels' objection, based on information known by the judge prior to trial which the judge could have, but chose not to, preliminarily explore."

**6.** "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. 5.

accused with protection from, *inter* alia, multiple punishment stemming from the same offense."); *State v. Woodson*, 338 Md. 322, 327–28, 658 A.2d 272, 275 (1995) ("The Fifth Amendment's double jeopardy bar is applicable to the states through the Fourteenth Amendment"); *Parks v. State*, 287 Md. 11, 14, 410 A.2d 597, 600 (1980) ("The prohibition against placing an accused twice in jeopardy for the same offense is rooted in the common law of this State and in addition is mandated by virtue of the fifth and fourteenth amendments to the United States Constitution."); *Bell v. State*, 286 Md. 193, 201, 406 A.2d 909, 913 (1979) ("[T]he prohibition against twice placing an accused in jeopardy contained in the Fifth Amendment to the Constitution of the United States is applicable to state criminal prosecution by virtue of the Fourteenth Amendment."); *Pugh v. State*, 271 Md. 701, 704, 319 A.2d 542, 544 (1974) ("The prohibition against twice placing a defendant in jeopardy is applicable in this State as a common law principle, and also by virtue of the Fifth and Fourteenth Amendments to the United States Constitution"); *Couser v. State*, 256 Md. 393, 395, 260 A.2d 334, 335 (1970) ("[T]he double jeopardy standards of the federal constitution are applicable to the states through the due process clause of the Fourteenth Amendment"). Providing that no person "shall ... be subject for the same offense to be twice put in jeopardy of life or limb," "[t]he Fifth Amendment guarantee against double jeopardy[, the double jeopardy clause,] prohibits both successive prosecutions for the same offense as well as multiple punishment for the offense." *Dixon v. State*, 364 Md. 209, 236, 772 A.2d 283, 299 (2001); *Newton v. State*, 280 Md. 260, 263, 373 A.2d 262, 264 (1977) citing *United States v. Wilson*, 420 U.S. 332, 342–43, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975); *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2228, 53 L.Ed.2d 187, 195 (1977); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–665 (1969).[7]

---

**7.** This also is Maryland common law. In *State v. Griffiths*, 338 Md. 485, 489, 659 A.2d 876, 879 (1995), we said: "Under the Maryland common law of double jeopardy, a defendant cannot be 'put in jeopardy again for the same offense-in jeopardy of being convicted of a crime for

 A prosecution commences when jeopardy attaches. *See Blondes v. State,* 273 Md. 435, 444, 330 A.2d 169, 173 (1975) quoting *United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 555, 27 L.Ed.2d 543, 554 (1971). Jeopardy, it is well settled, attaches when the defendant has been "put to trial before the trier of the facts, whether the trier be a jury or a judge," and thereby "subjected to the risk of conviction." *Serfass v. United States,* 420 U.S. 377, 388–392, 95 S.Ct. 1055, 1062 –1065, 43 L.Ed.2d 265, 274–275 (1975). Indeed, that is said to be "the basic test of initial jeopardy." *Daff v. State,* 317 Md. 678, 688, 566 A.2d 120, 125 (1989), citing *Serfass, supra.* In Maryland, jeopardy, generally, attaches at a bench trial "when the judge begins to hear or receive evidence." *See In re Kevin,* 402 Md. 624, 636, 938 A.2d 826, 833 (2008); *In re Bennett,* 301 Md. 517, 524, 483 A.2d 1242, 1245 (1984); *Blondes v. State,* 273 Md. 435, 444, 330 A.2d 169, 174 (1975) *See also Daff,* in which, explicating *Serfass,* 420 U.S. at 388, 95 S.Ct. at 1062, 43 L.Ed.2d at 274, we said: "[i]n a nonjury trial, jeopardy attaches when the court begins to hear evidence." 317 Md. at 688, 566 A.2d at 125.

 It is now well settled that the double jeopardy clause will not bar a new trial when a mistrial, the abortion of the trial before verdict and without the defendant's consent, was declared out of "manifest necessity." *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 165 (1824); *Illinois v. Somerville,* 410 U.S. 458, 461, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425, 429 (1973); *United States v. Jorn,* 400 U.S. 470, 480–481, 91 S.Ct. 547, 555, 27 L.Ed.2d 543, 554 (1971); *Gori v. United States,* 367 U.S. 364, 368–69, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 905 (1961). In *Perez,* the United States Supreme Court, addressing the issue of a mistrial's impact on double jeopardy for the first time, enunciated the rule still followed today:

> "We think, that, in all cases of this nature, the law has invested Courts of justice with the authority to discharge a

---

which he had been acquitted; in jeopardy of being twice convicted and punished for the same crime.' " (quoting *Gianiny v. State,* 320 Md. 337, 347, 577 A.2d 795, 800 (1990)).

jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner."

22 U.S. at 580, 6 L.Ed. at 165. Although the mistrial reviewed in *Perez* and, thus, the rule announced, involved a jury trial, the same rule, and analysis, applies when the mistrial is declared in a bench trial. *Cornish v. State*, 272 Md. 312, 315, 322 A.2d 880, 883 (1974). In that case, this Court applied the test announced in *Perez* to determine whether retrial of a defendant, who was on trial for murder, "following the trial judge's *sua sponte* declaration of a mistrial would violate the double jeopardy prohibition of the Fifth Amendment to the United States Constitution." *Id.* at 313, 322 A.2d at 882.

The facts of *Cornish* and the Court's analysis are instructive. The defendant was charged with murder and related offenses. *Id.* Subsequent to requesting a jury trial and informing the trial court of his intent to file a motion to suppress if the State, which had not answered his discovery motion, attempted to introduce his inculpatory statement, the defendant elected a bench trial. *Id.* at 314, 322 A.2d at 882. The prosecutor called one witness, a police officer, who "testified as to the details of the crime and certain clothing and other objects found near the victim's body." *Id.* He then addressed the court: "Now, Your Honor, inasmuch as it was anticipated that this case was going to be a guilty plea [on a] statement of facts, that is the only witness the State has available," thus, indicating his understanding that the defendant had agreed either to plead guilty or "allow the State to present the remainder of its case on an agreed statement of

facts." *Id.* Disagreeing with the State's recollection—indicating instead that the agreement was to proceed on an agreed statement of facts "if we could agree on a statement of facts"—defense counsel rejected the trial judge's suggestion that the case be continued, and, although willing to stipulate to the testimony of other police officers, objected to the use of his statement because of the discovery violation. *Id.*

The trial judge sustained the defendant's objection to the State's use of the defendant's statement, whereupon the defendant moved to dismiss the charges, arguing that he had been denied a speedy trial and "he is now in jeopardy." *Id.* at 314–15, 322 A.2d at 882. The State requested a continuance. *Id.* Denying both motions, *id.* at 315, 322 A.2d at 882, the trial judge declared a mistrial. She explained:

> "Secondly,[8] is the fact that it was stated clearly, perhaps too clearly, that it was anticipated that a guilty plea was going to be entered. Now that was stated to the trier of the facts who had to judge the case and give a verdict on the issue of guilt or innocence, and I know that trial judges, experienced trial judges, are supposed to be able to, and I hope we can, as far as possible ignore prejudicial remarks during the course of trial where we are sitting as the trier of the facts and yet judges are human also, and subconsciously perhaps, this reference to the guilty plea was implanted in my mind, and keep in mind this was a murder case.

> "All criminal cases are serious but this probably is the most serious with which any defendant or any court can be faced. This was, I think, a prejudicial remark which might

---

8. The trial judge also declared a mistrial because of the defendant's "sudden change of mind" to have a bench trial in lieu of a jury trial; that it was "grossly unfair" to the petitioner when the State failed to respond to the petitioner's motion to obtain a copy of a statement given by the petitioner to the police; and that a continuance was impractical because the trial judge would have been unable to "sit in fair and impartial judgment." *Cornish v. State,* 272 Md. 312, 315, 322 A.2d 880, 883 (1974). The Court agreed with the defendant that none of these reasons sufficed to justify a mistrial. *Id.* at 321–322, 322 A.2d at 886.

have been very difficult for me to overcome in the ultimate judgment of this case."

*Cornish v. State,* 272 Md. at 315, 322 A.2d at 883.

The petitioner moved to dismiss the case on the ground of double jeopardy. *Id.* at 316, 322 A.2d at 883. That motion was denied by the motion judge. *Id.* at 316, 322 A.2d at 883. We affirmed that judgment. In doing so, we relied on "the basic principles for determining the permissibility of a retrial following a mistrial," set forth in *Perez, supra,* "the 'fountain-head decision' on the application of the Federal Constitution's double jeopardy clause to a retrial following the declaration of a mistrial." *Cornish v. State,* 272 Md. at 316, 322 A.2d at 883. We gleaned from it and subsequent Supreme Court cases addressing the issue that "[t]he most significant guideline for the exercise of the trial judge's discretion is that a mistrial is to be declared only where it is 'manifestly necessary,' or 'under urgent circumstances,' or 'only in very extraordinary and striking circumstances,' and declaring a mistrial is not 'to be lightly undertaken.'" *Id.* at 318, 322 A.2d at 884 citing and quoting *United States v. Perez, supra; United States v. Coolidge,* 2 Gall. 364, 25 Fed. Case No. 14, 858 (C.C.Mass. 1815); *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963); *Illinois v. Somerville,* 410 U.S. at 471, 93 S.Ct. at 1069, 35 L.Ed.2d at 429.

After reviewing the circumstances in which retrial, after mistrial, has been held to be permitted, *see Cornish,* 272 Md. at 318–19, 322 A.2d at 884–85 (and cases therein cited), and those in which retrial has been prohibited, *id.* at 319–320, 322 A.2d at 885–86, (and cases therein cited),[9] the Court applied the *Perez* standard to the situation faced by the trial court in that case. It rejected the defendant's argument that the trial

---

9. These examples are by no means exhaustive of under what circumstances it is manifestly necessary, or not, to declare a mistrial. Whether manifest necessity to declare a mistrial and avoid double jeopardy exists is based upon the unique facts and circumstances of each case. *Hubbard v. State,* 395 Md. 73, 90, 909 A.2d 270, 280 (2006).

judge abused her discretion when she declared a mistrial, holding, instead, that, under the circumstances there presented, there was manifest necessity for the declaration of a mistrial. *Id.* at 320, 322 A.2d at 886. Comparing the situation of the trial judge in that case to that of an occurrence during a jury trial "when it is made to appear to the court that . . . the jurors, or any of them, are subject to such bias or prejudice as not to stand impartial between the government and the accused," *id.* at 321, 322 A.2d at 886, quoting *Simmons v. United States,* 142 U.S. 148, 154, 12 S.Ct. 171, 172, 35 L.Ed. 968, 971 (1891), thus rendering a "juror's impartiality doubtful," while recognizing the imperfection of the analogy,[10] the Court concluded that it was not an abuse of discretion for the trial judge to declare a mistrial when the trial judge was under the impression that a guilty plea was to be entered. *Id.* at 322, 322 A.2d at 887. In so doing, it accepted the trial judge's statement that "this reference to the guilty plea was implanted in my mind" and that it was "a prejudicial remark which might have been very difficult for me to overcome in the ultimate judgment of this case." *Id.* at 321, 322 A.2d at 886. The Court explained:

> "[W]here the impartiality of a judge in a non-jury trial is in fact affected by remarks during the trial, and the judge acknowledges that his objectivity is compromised, the situation is the same as when a juror's impartiality is rendered doubtful. The judge, as trier of the facts in lieu of a jury, cannot properly assess the evidence if his impartiality is affected by an occurrence *during the trial.* In such a circumstance, there is the same 'manifest necessity' to de-

---

10. The Court explained:
"Of course, many different occurrences might lead to a concern that a juror's impartiality is impaired, but the same events might not be deemed to affect a judge's impartiality. This is because a judge's training and experience render him less susceptible to influence by improper remarks or occurrences at a trial. Thus, an event which would necessitate a mistrial where the trial is before a jury, might not require a mistrial in a non-jury trial."
*Cornish v. State,* 272 Md. at 322, 322 A.2d at 886.

clare a mistrial as where a juror is biased." (emphasis added).

*Id.* at 322, 322 A.2d at 886–87.

## III.

 Whether manifest necessity to declare a mistrial and, thus, whether the prohibition of the double jeopardy clause is triggered depend upon the unique facts and circumstances of each case. *Perez,* 22 U.S. at 580, 6 L.Ed. at 165; *Cornish,* 272 Md. at 318, 322 A.2d at 885. *See Hubbard v. State,* 395 Md. 73, 90, 909 A.2d 270, 280 (2006); *United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 555, 27 L.Ed.2d 543, 554 (1971). While it is in the sound discretion of the trial judge to declare a mistrial, he or she may do so only if a "high degree" of necessity demands that he or she do so. *State v. Crutchfield,* 318 Md. 200, 208, 567 A.2d 449, 453 (1989) *quoting Arizona v. Washington,* 434 U.S. 497, 506, 98 S.Ct. 824, 831, 54 L.Ed.2d 717, 729 (1978). This is so in order to ensure fairness to the defendant:

> "Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.' The reasons why this 'valued right' merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed.
>
> "Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial."

*Arizona v. Washington,* 434 U.S. at 503–505, 517, 98 S.Ct. at 829–830, 54 L.Ed.2d at 727–728. Furthermore, as we ac-

knowledged in *Cornish,* retrial is barred when there are "reasonable alternatives to a mistrial" that are "feasible and could cure the problem." 272 Md. at 320, 322 A.2d at 886 citing *United States v. Jorn,* 400 U.S. at 487, 91 S.Ct. at 558, 27 L.Ed.2d at 558; *United States v. Kin Ping Cheung,* 485 F.2d 689, 691 (5th Cir.1973); *United States v. Tinney,* 473 F.2d 1085, 1089 (3d Cir.1973), cert. denied 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 156 (1973). *See Hubbard v. State,* 395 Md. 73, 92, 909 A.2d 270, 281 (2006), *State v. Crutchfield,* 318 Md. 200, 213, 567 A.2d 449, 455 (1989), *In re Mark,* 294 Md. 244, 263, 449 A.2d 393, 404 (1982); *United States v. Sartori,* 730 F.2d 973, 975–976 (4th Cir.1984).

*Sartori,* albeit a jury case, is instructive. There, the Fourth Circuit held that the double jeopardy clause was violated when, after only four witnesses, during the first day of the trial of a case involving charges arising out of the defendant's practice of "wholistic" medicine in the treatment of cancer patients, the trial judge, who was an American Cancer Society ("ACS") lay leader, declared a mistrial, over the defendant's objection. The trial judge's involvement with the American Cancer Society and its potential impact on the ability of the trial judge to preside over the defendant's case was known by the parties prior to the start of trial. *Sartori,* 730 F.2d at 974. Indeed, the prosecutor requested that the judge place his involvement on the record, which the judge did, noting that he was "not involved with the 'committee of unproven methods' which reviews alternative approaches to cancer cures similar to those advocated by practitioners" like the defendant. *Id.* The trial judge's offer to recuse himself, if requested, was not accepted, either before or after the jury was empaneled. *Id.* at 974–75. After the third of the Government's witnesses had testified, the trial judge informed counsel "that he contemplated declaring a mistrial [because, a]ccording to his memorandum opinion, [he] believed at this point that because of his long involvement with the ACS, his continued presence at trial was not consistent with the appearance of judicial propriety." *Id.* at 730 F.2d at 975. He rejected a proposed alternative to mistrial—the substitution of the trial judge pursuant to *Fed.*

*R.Crim.P.* 25(a) [11]—and, determining that there was no other, the trial judge declared a mistrial at the conclusion of the next witnesses' testimony. *Id.*

While the Fourth Circuit held that Fed.R.Crim.P. 25(a) provided a reasonable alternative to declaring a mistrial in that case, it was only one of several alternatives, in lieu of declaring of mistrial, that existed:

"In addition to the alternative authorized by *Fed. R.Crim. P.* 25(a), other obvious and adequate alternatives to a mistrial were available in this case. If the [trial judge] had serious doubts about his ability to remain impartial, he should have recused himself before empaneling the jury. Similarly, his concerns about the appearance of judicial impropriety should have been addressed before jeopardy attached."

*Id.* at 976. With regard to the latter, when recusal is premised on perception, the court noted, relying on 28 U.S.C. § 455(a),[12] that the ground for disqualification may be waived, after full disclosure. *Id.* We find the reasoning of, and the conclusions drawn by, the Fourth Circuit persuasive with regard to the resolution of this case.

There can be no question that the petitioner was placed in jeopardy once he was put to trial and the trial judge began to hear evidence. *See In re Kevin*, 402 Md. 624, 636, 938 A.2d 826, 833 (2008) (Jeopardy, generally, attaches at a bench trial "when the judge begins to hear or receive evi-

---

11. *Fed.R.Crim.P.* 25(a) provided:

"If by reason of death, sickness or other disability the judge before whom a jury trial had commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial."

The trial judge did not believe the Rule provided an alternative for recusal; however, the Fourth Circuit disagreed, holding that "disability" was encompassed in the reasons for "recusal." *See United States v. Sartori*, 730 F.2d 973, 976 (4th Cir.1984).

12. "(a) Any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

dence.") We are left, thus, to determine whether, in the instant case, it was an abuse of discretion for the trial judge to declare a mistrial. We hold that, rather than proceeding to try the petitioner, knowing what she did of his criminal history, the trial judge should have recused herself. It follows that the trial judge erred when, taking all the circumstances in consideration, she declared a mistrial, and thus, retrial of the petitioner is barred by the double jeopardy clause.

Prior to jeopardy attaching, the trial judge was aware that the petitioner had twice been convicted of committing sexual offenses against minors. She, herself, had presided over one of these earlier, unrelated sexual offense cases and she was well aware of the second case, which was presided over by a different trial judge. Moreover, the trial judge was aware of the substance of the State's case, at least that portion critical to the credibility of the complaining witness and its assessment. Before jeopardy attached, the State informed the court that the complaining witness would testify that the petitioner sexually assaulted her in the summer of 2005 and that she reported the assault some three years later, in June 2008, after hearing a sermon. The trial judge also knew who the other State's witnesses would be and, therefore, that there was not going to be forensic evidence. Finally, the trial judge knew, prior to jeopardy attaching, that the petitioner was the only defense witness expected to testify and, more important, that his testimony would be that the alleged offenses "did not happen."

The trial judge explained that her decision to declare a mistrial was made necessary because her knowledge of petitioner's two "sexual-related convictions involving young women under the age of 17 or 16" could not be used to decide the case since the convictions were "not placed into evidence, either by way of an impeachable conviction or evidence if admissible of other past wrongs." As a result, although there was evidence tending to undermine the complaining witness's testimony, but, apparently none, other than the convictions, which were not themselves final, tending to undermine the

petitioner's,[13] the trial judge, being "unable to extract out of [her] brain and [her] analysis of whether to believe [petitioner] knowing what [she knew] from those other two cases," could not proceed with the trial. The justification offered by the motions judge and the intermediate appellate court is the unforeseeability of the credibility determination that the judge was faced with at the close of the evidence.

The trial judge knew, as any trial judge would, that part of her function in this trial was to make credibility determinations. After all, "[d]etermining the credibility of witnesses is the primary function of a fact finder." *Douglas v. State*, 32 Md.App. 311, 317, 360 A.2d 474, 477 (1976). *See Binnie v. State*, 321 Md. 572, 580, 583 A.2d 1037, 1041 (1991) ("It is axiomatic that ... the credibility of witnesses [is] always [a] matter for the [court] to determine when it is the trier of facts.") *Abbott v. State*, 190 Md.App. 595, 615, 989 A.2d 795, 807 (2010) ("[W]eighing the credibility of witnesses [is] always [a] matter for the fact finder.") And the credibility determinations that a trial judge will be required to make are not neatly catalogued or easily, if at all, predictable. Nor are they, or should they be, easy decisions. As fact-finder, the trial judge should have known and, indeed, anticipated the

---

**13.** Although it is conceivable that forensic evidence may have supported the petitioner's denial of sexual contact, the tenor of the trial judge's remarks suggests that she was looking for evidence that would confirm the propriety of the use of the impeachment evidence. That certainly is the thrust of the examples she gave, one relating to the promptness of the complaining witness' reporting of the incident and the other, involving the petitioner's making an admission. As disturbing, if the trial court and the Court of Special Appeals are correct, is that information that implicates partiality may be known to the trier of fact, without the obligation of disclosure, and may be used if the proper predicate is presented and, if the proper predicate is not presented, will be the basis for a mistrial. This runs counter to the use of safeguards, such as *voir dire*, which are designed to make potential fact-finders disclose information that could implicate partiality before being selected. *See Jenkins v. State*, 375 Md. 284 331, 825 A.2d 1008, 1035 (2003) ("[O]ne of the ways to protect a defendant's constitutional right to an impartial [fact-finder] is to expose the existence of factors which could cause a [fact-finder] to be biased or prejudiced through the process of *voir dire* examination.") The instant case is a bench trial, however, and no voir dire was available.

possibility, that the case could come down to a "he said/she said" case, that she would have to choose directly, and only, between the credibility of the complaining witness and that of the petitioner.

This pre-jeopardy knowledge possessed by the trial judge, bearing as it did on the credibility of both the complaining witness and the petitioner, had direct significance to the ultimate issue she had to decide, the petitioner's guilt. That the information was not direct evidence of guilt, but pertained to credibility, is of no consequence. To be sure, consistent with the *Cornish* analysis, *see* 272 Md. at 321–322, 322 A.2d at 886–887, the information that the trial judge, who was the trier of fact in this case, possessed about the petitioner's past criminal involvement, in particular that of a sexual nature with regard to minors, was of the kind that implicated, and undermined, the trial judge's impartiality. Unlike in *Cornish*, however, where the information, on the basis of which the trial judge declared a mistrial, was conveyed to the trial judge in remarks made by the prosecutor during trial—after jeopardy had attached—here, the information known by this trial judge predated the trial and, thus, the attachment of jeopardy. In this case, what the trial judge knew when she declared a mistrial and which prompted the mistrial was the same information she had prior to jeopardy attaching.

It is when a trial judge's pre-jeopardy knowledge has a direct significance to the matter to be decided by the court that the impact of that knowledge on the trial judge's impartiality must be assessed. Where the trial judge is aware of the substance of the defense case; is knowledgeable of the defendant's prior convictions that have a direct significance to the case before the trial judge; and, through her own personal assessment, knows that she will be unable to assess the defendant's credibility in the absence of an admission by the petitioner or other evidence tending to undermine his credibility, retrial of the defendant, after a mistrial has been declared, is barred by the double jeopardy clause.

Under these circumstances, when it is the court that is the trier of facts, and the court's impartiality, whether due to a personal bias or prejudice towards a criminal defendant or an inability to resolve disputed factual allegations, is impaired, manifest necessity does not exist when the reasonable alternative of recusal existed prior to jeopardy attaching.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY. COSTS TO BE PAID BY CAROLINE COUNTY.

BATTAGLIA and MURPHY, JJ., Dissent.

MURPHY, J., dissenting, in which BATTAGLIA, J., joins.

In the case at bar, the record shows that Petitioner requested to be tried by a judge who had previously convicted him of a sex offense, even though he and his trial counsel knew about that prior conviction. I would join the majority opinion if the record also showed that—*before* jeopardy attached—Petitioner's trial counsel moved for the trial court's recusal and the trial court denied that motion. Because no such motion was made, however, I am persuaded that Petitioner voluntarily ran the risk that the trial court would—in fairness to Petitioner— find it necessary to declare a mistrial. Under these circumstances, I would affirm the judgment of the Court of Special Appeals.

Judge BATTAGLIA has authorized me to state that she joins in this dissenting opinion.