**UNITED STATES of America, Appellant,**

v.

**Hellfried E. SARTORI, Appellee.**

No. 83–5129.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 4, 1983.

Decided March 30, 1984.

---

J. Frederick Motz, U.S. Atty., Baltimore, Md. (Glenda C. Gordon, Asst. U.S. Atty., Baltimore, Md., on brief), for appellant.

Michael E. Marr, Baltimore, Md. (Stephen A. Hecker, Marr, Bennett & Carmody, P.A., Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, and PHILLIPS and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Hellfried E. Sartori was charged before the Honorable Joseph H. Young in the United States District Court for the District of Maryland on six counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2, one count of false statements in violation of 18 U.S.C. §§ 1001 and 2, and three counts of fraudulent interstate distribution of drugs not approved by the Food and Drug Administration in violation of 21 U.S.C. §§ 331(d), 333(b) and 355. After a jury had been empaneled and the government had called four witnesses, Judge Young recused himself and declared a mistrial. Subsequently, the government brought charges anew, and Sartori moved to dismiss on the ground that this second prosecution violated the fifth amendment's double jeopardy clause. District Court Judge Miller granted the motion. *United States v. Sartori*, 560 F.Supp. 427 (D.Md. 1983). We affirm.

I.

Hellfried Sartori is a medical doctor practicing "wholistic" medicine. Claiming to be a cancer specialist, Sartori allegedly sold a chemical compound, cesium chloride, representing it as a cancer cure. Buyers paid $2,000 for the compound and for six months of "physical examinations, consultations and other personal services."

When Sartori was initially arraigned before Judge Young, the prosecutor, apparently aware of Judge Young's extensive involvement in the American Cancer Society (the ACS), requested the judge to inform counsel of his activities in the ACS. Judge Young told counsel that he was a "lay leader" of the ACS but stated that he was not involved with the "committee of unproven methods" which reviews alternative approaches to cancer cures similar to those advocated by practitioners of wholistic medicine. Judge Young also told counsel that he would recuse himself at the request of either party. Neither party, however, objected to his continued participation in the case. Before empaneling the jury, the judge again reminded counsel of his ACS activities, and again neither party requested recusal.

During the first day of trial, the government called four witnesses. The first two, relatives of two of Sartori's deceased cancer patients, testified regarding the treatment Sartori had prescribed for his former patients. The third witness, Keith Brewer, Ph.D., testified about the efficacy of cesium chloride, laetrille, vitamins and other novel approaches to cancer treatment. After Brewer's testimony, Judge Young con-

vened an unrecorded bench conference to inform counsel that he contemplated declaring a mistrial. According to his memorandum opinion, Judge Young believed at this point that because of his long involvement with the ACS, his continued presence at trial was not consistent with the appearance of judicial propriety. Both counsel objected to the proposed declaration of mistrial. The defense expressed its willingness to continue with Judge Young. The prosecution also requested Judge Young to remain, apparently because of its concern over application of the double jeopardy clause. The court then asked defense counsel if he would agree to another judge imposing sentence in the event of conviction, but the defendant refused this alternative. The government suggested that instead of declaring a mistrial, the court should request that another judge be assigned to take over the trial pursuant to Fed.R.Crim.P. 25(a). Judge Young rejected this suggestion stating that the Fourth Circuit Court of Appeals had recently disapproved the practice of substituting judges. He was apparently referring to the decision of this court in *Whalen v. Ford Motor Credit Co.*, 684 F.2d 272 *(en banc), cert. denied,* 459 U.S. 910, 103 S.Ct. 216, 74 L.Ed.2d 172 (1982), a civil case.

After this conference, the trial resumed for approximately a half hour while Judge Young considered alternatives to declaring a mistrial. He concluded none were available and at the end of the testimony of the fourth witness informed the jury that:

> ... a mistrial in this case is required by manifest necessity since the ends of public justice, it seems to me, at this time could be defeated by allowing the trial to continue.

## II.

The fifth amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb...." The double jeopardy clause has been interpreted by the Supreme Court to bar further prosecution after a mistrial has been declared over a defendant's objection unless there was "manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated." *United States v. Perez,* 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824). Recently, in *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), the Supreme Court articulated the justifications for this rule:

> Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's "valued right to have his trial completed by a particular tribunal." The reasons why this "valued right" merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed.
>
> Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Id.* at 503–505, 98 S.Ct. at 829–830 (footnotes omitted).

Because of the variety of fact situations which might mandate a mistrial, the Supreme Court has refused to apply the manifest necessity standard in a mechanical fashion. *E.g., Arizona v. Washington,* 434 U.S. at 506, 98 S.Ct. at 830; *Illinois v. Somerville,* 410 U.S. 458, 462–66, 93 S.Ct. 1066, 1069–71, 35 L.Ed.2d 425 (1973). Each case must be examined to determine if a "high degree" of necessity supports the mistrial order, *Arizona v. Washington,* 434 U.S. at 506, 98 S.Ct. at 830, and the reviewing court must determine whether the mistrial order reflects the exercise of sound discretion. 434 U.S. at 514, 98 S.Ct. at 834. Defining the scope of this discretion, we have previously stated that:

> In determining whether the trial judge exercised sound discretion in declaring a

mistrial, we must consider if there were less drastic alternatives to ending the trial. If less drastic alternatives than a mistrial were available, they should have been employed in order to protect the defendant's interest in promptly ending the trial, and the Commonwealth's interest in rapid prosecution of offenders. *Harris v. Young,* 607 F.2d 1081, 1085 (4th Cir.1979), *cert. denied sub. nom Mitchell v. Harris,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980).

■ In this case Judge Miller concluded that a reasonable alternative to declaring a mistrial was available under Fed.R.Crim.P. 25(a). The rule states:

> If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial.

The term "other disability" in Rule 25(a) includes disability by reason of recusal. *See Bennett v. United States,* 285 F.2d 567, 572 (5th Cir.1960), *cert. denied,* 366 U.S. 911, 81 S.Ct. 1087, 6 L.Ed.2d 236 (1961). We agree that substitution pursuant to Rule 25(a) was a viable alternative in this case.[1] A mistrial was declared after only one day of the jury trial, and at that point a substitute judge could have become familiar with the case without great difficulty. The issues already raised before Judge Young were not particularly complex. *Cf. Powers v. United States,* 412 A.2d 1205 (D.C.App.1980) (substitution not viable because the curative instruction contemplated by the absent judge presented problems too complicated to expect a substitute judge to master). The only novel legal issues presented concerned the questions of whether cesium chloride was a new drug within the meaning of 21 U.S.C. § 321 and whether a federal court or the FDA should make this determination. These issues were presented to Judge Young in the government's trial memo and in the defendant's memorandum in support of its motion to dismiss. These relatively brief documents constitute part of the record and were more than adequate to acquaint a substituting judge with the issues presented at trial.

In addition to the alternative authorized by Fed.R.Crim.P. 25(a), other obvious and adequate alternatives to a mistrial were available in this case. If Judge Young had serious doubts about his ability to remain impartial, he should have recused himself before empaneling the jury. Similarly, his concerns about the appearance of judicial impropriety should have been addressed before jeopardy attached. Once, however, Judge Young chose to proceed with the trial after no objections were raised concerning his association with the ACS, completing the trial offered a less drastic alternative to declaring a mistrial over the defendant's objections.

28 U.S.C. § 455(a) requires any federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[2] Where the ground for disqualification arises only under this subsection, however, waiver by the parties "may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e). After Judge Young fully explained his involvement with the ACS, the parties waived the § 455(a) disqualification requirement by declining to request recusal when twice presented with an opportunity to do so. Judge Young accepted this waiver by empaneling the jury and proceeding

---

**1.** No reason appears in the record for the rejection of this alternative other than the erroneous conclusion that substitution was precluded by this court's ruling in *Whalen.* Unlike the defendant in *Whalen,* however, the defendant below raised no objection to the government's suggestion that Judge Young seek substitution pursuant to Rule 25(a). Moreover, *Whalen* was a civil case. The Rules of Civil Procedure have no counterpart to Fed.R.Crim.P. 25(a).

**2.** 28 U.S.C. § 455(b) lists a set of circumstances in which a federal judge has an absolute duty to disqualify himself. The record does not indicate that any of these circumstances applied to Judge Young.

with the trial. The grounds upon which Judge Young could recuse himself then shifted. The inquiry was no longer whether his impartiality might reasonably be questioned but instead became whether the risk of an appearance of judicial impropriety constituted manifest necessity for declaring a mistrial. Given that Judge Young had no economic or other tangible interest in the outcome of the trial and that the defendant did not request the judge's recusal when presented with an informed opportunity to do so, we conclude that the risk was simply not great enough to constitute manifest necessity. "Without any such necessity the declaration of the mistrial cannot be characterized as the exercise of sound discretion." *Harris v. Young*, 607 F.2d at 1087.

### III.

Because the first trial was unnecessarily aborted over the defendant's objection, Sartori had a constitutional right not to be retried. Accordingly, the district court's dismissal pursuant to the double jeopardy clause is

AFFIRMED.

Alvin B. Rubin, Circuit Judge, filed concurring opinion, in which Tate and Higginbotham, Circuit Judges, joined.

E. Grady Jolly, Circuit Judge, filed dissenting opinion, in which Johnson and Williams, Circuit Judges, joined.