# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE :
:     Case No. 1509008379
v. :     In and For Kent County
:
MICHELE C. MARVEL :
:
    Defendant. :

Submitted: March 31, 2017
Decided: April 10, 2017

## <u>OPINION & ORDER</u>

*Upon Defendant's Motion to Dismiss – DENIED*

Tiphanie Miller & Laura Nastase Najemy, Deputy Attorneys General, DEPARTMENT OF JUSTICE, Wilmington, Delaware, *Attorneys for the State*.

Andre Beauregard, Esquire, & Ronald Poliquin, Esquire, BROWN, SHIELS & BEAUREGARD, LLC, Dover, Delaware, *Attorneys for the Defendant*.

Clark, J.

The State charged Defendant Michele Staats Marvel (hereinafter "Ms. Marvel") with three counts of Unlawful Access of Prescription Monitoring Program Information in violation of 16 *Del. C.* § 4798(t) and one count of Making a False Statement in violation of 11 *Del. C.* §1245A. Ms. Marvel waived her right to a trial by jury and opted for a bench trial. After the first day of testimony, the trial judge declared a mistrial after he discovered information that made it impossible for him to proceed without the appearance of judicial bias. The case is now set for retrial before a new judge. However, Ms. Marvel filed this motion to dismiss on double jeopardy grounds arguing that the mistrial was not one of manifest necessity, and therefore, a second trial is barred. The State opposes this motion arguing that there was manifest necessity to declare the mistrial, and therefore, the double jeopardy clause is not a bar to retrial. For the reasons set forth below, Ms. Marvel's motion is DENIED.

## BACKGROUND AND ARGUMENTS OF THE PARTIES

Ms. Marvel moves for dismissal of the charges brought against her. On October 27, 2015, Ms. Marvel was arrested, and after she waived her right to a trial by jury, her case was scheduled for a bench trial. Within a week of when Ms. Marvel's trial was to begin, an investigator from the Department of Justice contacted Ms. Marvel's mother. The investigator asked Ms. Marvel's mother whether she had worked for the courts and if she had ever worked for the trial judge. The Department of Justice conducted its investigation of Ms. Marvel's mother without the knowledge of defense counsel.

The trial judge conducted an office conference on February 21, 2017, the day before the start of trial. During the course of that conference, the State informed the trial judge and defense counsel that

2

about a year and a half ago, November of 2015, when I started trying this case, I met with [defense counsel]. He did mention . . . your Honor had perhaps worked with the defendant's mother in the past and your Honor had specifically requested as a favor that [defense counsel] take this case. We did contact the defendant's mother and she indicated that she had worked in Chambers but not with your Honor directly.[1]

When the State made this information known, both the trial judge and defense counsel indicated that they had no recollection of these circumstances.[2] Defense counsel reiterated in his reply brief that he had no knowledge of such a conversation nor did he have knowledge of the trial judge asking him to take the case as the Office of Defense Services appointed him to represent Ms. Marvel.[3] After learning that the Court did not have a concern about a potential conflict of interest, the State consented to a bench trial.[4] Ms. Marvel's defense counsel informed the Court that he did not see a conflict.[5] After discussing the evidence that both parties intended to present during the trial, the trial judge consented to a bench trial.[6]

On February 22, 2017, Ms. Marvel's case proceeded to trial. On the first day of trial, the State called five witnesses. At the end of the day, the Court set the trial to reconvene on February 27, 2017. However, on February 23, 2017, the trial judge sent an email to counsel stating

> [i]t has come to his attention that the defendant in this case is [a friend's] daughter. I think this presents a problem with my going forward to the case. Moreover, I do not believe that the problem can disappear simply by having counsel 'agree that we are satisfied that

---

[1] Transcript of Office Conference at 4.
[2] *Id.*
[3] Reply to State's Response to Defendant's Motion to Dismiss at 1.
[4] Transcript of Office Conference at 4.
[5] *Id.* at 5.
[6] *Id.* at 10.

the Court will be completely impartial' or any such thing. I am open to hearing any input anyone has on the subject. . . . Since counsel for the defendant first requested a bench trial, I'm a little surprised that this fact wasn't made known to me before we started. Possibly it wasn't known by him either. In any event, I certainly do not look at this as a fault of either the State or the Court. Hence, no issue of double jeopardy would come into play.[7]

That same day, the trial judge held a teleconference with the parties to determine how to proceed. During that teleconference, the trial judge informed the parties that he "was told that defendant is [a friend's] daughter."[8] The trial judge informed the parties that he has "known [her] for a long time and will see her with some regularity."[9]

In response, defense counsel informed the Court that he was not aware of any relationship between the defendant and the Court.[10] He then reminded the trial judge of the conversation during the pretrial conference where the State informed the Court of a potential conflict due to Ms. Marvel's mother working in the court system.[11] The trial judge responded that he did not recall such a conversation.[12] The judge further maintained that he did not think there was any way for him to proceed.[13] The State concurred in this decision.[14] Defense counsel responded

[a]ll right. I mean, I don't think I really have a say in what . . . . I don't have a problem with Your Honor but I know the position that

---

[7] Defense Ex. C.

[8] Transcript of Teleconference at 2.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 2–3. Defense counsel stated during the teleconference that "I thought there was – the State might have mentioned this at our pretrial conference that they had some concerns at one point in time and Your Honor maybe misunderstood that and said that you don't recall anything like that or there was no problem with that." *Id.*

[12] *Id.* at 3. The trial judge stated "I don't recall anything like that and certainly not around the time of going into the bench trial." *Id.*

[13] *Id.*

[14] *Id.*

Your Honor would be in and I can see that position. The only thing I would mention is that, you know, we're half way through and where we go from here.[15]

When the trial judge informed the parties that they would have to start the trial again, defense counsel merely responded with "[a]ll right."[16]

Following the teleconference, the trial judge issued an order the following day, February 24, 2017, declaring a mistrial. The Order stated

[b]ecause of the belated understanding of the Court that Defendant Marvel is the daughter of a long time friend of the bench trial Judge, who is, in essence, the entire jury in this case, the continuation of the trial (presently approximately one-half completed) cannot go forward to verdict. To state the obvious, this is the equivalent of all twelve jurors, after the first day of testimony, reporting to the Court that they are friends with the defendant's mother, but had been unaware of that association until the completion of the first day of trial. Upon application of the State, without comment by the defense, and in concordance with the belief of the Court, a MISTRIAL, not the result of any impropriety on the part of the State or the Court, must be declared.[17]

After the Court declared a mistrial and the case was set to proceed again before a new judge, Ms. Marvel filed a motion to dismiss arguing that double jeopardy precludes a retrial of the charges against her. She argues that double jeopardy attached at the moment the Court swore in the first witness, and that the double jeopardy clause bars a retrial where a trial judge *sua sponte* declares a mistrial unless there is a showing of manifest necessity. According to Ms. Marvel, a high degree of necessity is required to retry a case under these circumstances, and the declaration of a mistrial in her case was not a necessity. Namely, she argues

---

[15] *Id.*
[16] *Id.*
[17] Defense Ex. D.

that because the trial judge had knowledge of this information prior to the start of trial, the mistrial declaration does not meet the high degree of necessity required.

In furtherance of this argument, Ms. Marvel argues that case law in other jurisdictions have adopted a rule that precludes a finding of manifest necessity when the trial judge obtained the information leading to the eventual mistrial declaration prior to jeopardy attaching.[18]  She argues that these cases provide persuasive authority for this Court to adopt a similar rule.  Therefore, Ms. Marvel maintains that because the State made the trial judge aware of a potential conflict prior to the start of trial, a finding of manifest necessity is precluded.  Under these circumstances, according to Ms. Marvel, the mistrial was not necessary as it did not contain an element of surprise.  Ms. Marvel maintains that because the trial judge had knowledge of this information prior to jeopardy attaching, the judge had an alternative solution: had the trial judge recused himself when he first learned of a potential conflict prior to jeopardy attaching, the Court could have avoided declaring a mistrial.  Finally, she further claims that negligence should negate manifest necessity because there was an alternative solution available.

The State, in response, argues that the double jeopardy clause does not bar a retrial because Ms. Marvel consented to the mistrial when defense counsel failed to object to it and then agreed to a retrial during the teleconference.  The State argues that when a defendant consents to a mistrial, the double jeopardy clause does not bar a retrial.  However, even had Ms. Marvel not consented to this mistrial, the State emphasizes what it feels was manifest necessity for the declaration.  The State maintains that it brought to the Court's attention a possible, previous *work* relationship with Ms. Marvel's mother.  The State did not disclose the mother's

---

[18] For this proposition, Ms. Marvel cites *United States v. Sartori*, 730 F.2d 973 (4th Cir. 1984), *State v. Buell*, 605 A.2d 539 (Conn. 1992), and *Mansfield v. State*, 29 A.3d 569 (Md. 2011).

6

name to the Court nor did the State or Defendant disclose the existence of a *social* relationship. Therefore, according to the State, the trial judge did not have the information later requiring the mistrial before jeopardy attached. The State maintains that the trial judge learned for the first time of the conflict of interest after the first day of trial. Once the trial judge learned of the conflict of interest, he determined that he could no longer be impartial. Therefore, according to the State, out of manifest necessity and the appearance of impartiality of the justice system, the trial judge appropriately declared a mistrial.

Ms. Marvel filed a reply to the State's response arguing that defense counsel did object to the mistrial. Defense counsel argues that he merely acknowledged the position the trial judge was in but also pointed out the hardship a mistrial would create for Ms. Marvel given the trial was about halfway completed. Ms. Marvel argues that this was sufficient evidence of an objection to the mistrial declaration. Ms. Marvel then reiterated the same argument that there cannot be manifest necessity present in this case because the trial judge had knowledge of the conflict prior to jeopardy attaching.

Here, under the circumstances of this case, the Court finds that the trial judge declared a mistrial out of manifest necessity. As there was manifest necessity, double jeopardy does not bar the State from retrying the charges against Ms. Marvel. This conclusion is not altered by whether defense counsel objected to the decision or not.[19] Therefore, this Court does not decide whether the defense counsel's actions prior to the declaration of a mistrial were sufficient to constitute an objection.

---

[19] *See Bailey v. State*, 521 A.2d 1069, 1077 (Del. 1987) (noting that defense counsel did not object to the trial court declaring a mistrial and then conducted a manifest necessity inquiry after which the Court determined there was a manifest necessity, which allowed the State to retry the defendant). In *Bailey*, this inquiry was not affected by defense counsel's lack of an objection.

7

**DISCUSSION**

Both the United States Constitution and the Delaware Constitution expressly include provisions that protect a person from being put in jeopardy twice for the same offense.[20] In a bench trial, jeopardy attaches as soon as a criminal court swears in the first witness.[21] As the Court heard testimony from five of the State's witnesses before declaring a mistrial, jeopardy clearly attached to the case at hand.

However, the fact that jeopardy has attached merely means the double jeopardy provisions have been implicated, not that these provisions bar retrial.[22] The United States Supreme Court declared that the double jeopardy clause of the United States Constitution is not violated if a court declared a mistrial when "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."[23]

The Delaware Supreme Court adopted the doctrine set forth by the United States Supreme Court in *Perez*, holding that a court must review a decision to grant a mistrial, absent a defense motion, to determine if there was a manifest necessity.[24] If a court grants a mistrial out of manifest necessity, the double jeopardy provisions do not bar a retrial.[25] The Court went on to state that

> [i]n the absence of a motion by a defendant for a mistrial, the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option to continue with the trial, until a scrupulous exercise of judicial discretion leads to the conclusion that

---

[20] U.S. Const. amend. V; Del. Const. art. I, § 8. The Delaware Supreme Court has determined that the analysis is the same under both constitutional provisions. *See Bailey*, 521 A.2d at 1075 (finding that the double jeopardy analysis is identical "under either Constitutional provision").

[21] *E.g.*, *Brown v. Day*, 69 A.3d 370, 2013 WL 1633264, at *2 (Del. Feb. 26, 2013) (Table); *State v. Dennis*, 306 A.2d 729, 731 (Del. 1973).

[22] *United States v. Jorn*, 400 U.S. 470, 480 (1971).

[23] *United States v. Perez*, 22 U.S. 579, 579 (1824).

[24] *Bailey*, 521 A.2d at 1075–76 (quoting *Perez*, 22 U.S. at 579).

[25] *Id.*

8

the end of public justice would not be served by a continuation of the proceedings.[26]

Therefore, this Court must determine whether the trial judge granted a mistrial out of manifest necessity.

Ms. Marvel claims that there cannot be manifest necessity in the case at hand because declaring a mistrial was not the trial judge's only solution. Ms. Marvel cites *Downum v. United States*[27] and *United States v. Jorn*[28] in arguing that where there were alternative solutions, the declared mistrial was not one of manifest necessity.

The Delaware Supreme Court has followed the approach of both *Downum* and *Jorn* in adopting a standard that requires a trial court to consider alternative solutions before declaring a mistrial.[29] Despite Ms. Marvel's arguments to the contrary, the trial court considered alternatives before declaring a mistrial. Here, the trial judge held a teleconference to allow the parties to discuss alternative avenues to proceed.[30] In this regard, the trial judge stated that he did not believe he could continue the trial but allowed the parties to provide suggestions.[31] After opening this issue to discussion, neither party provided an alternative. Therefore, the principle set forth in *Jorn* and *Downum*, which was subsequently adopted by Delaware courts, is not violated in this case.

---

[26] *Id.* at 1076.

[27] *Downum v. United States*, 372 U.S. 734, 737 (1963) (holding that double jeopardy barred defendant's retrial because there was an alternative to grating a mistrial in that the prosecutor could have sought a continuance).

[28] *United States v. Jorn*, 400 U.S. 470, 487 (1971) (holding that a retrial was barred because the trial judge hastily declared a mistrial after determining that witnesses were not advised of their constitutional rights without considering any alternative solutions).

[29] *Swanson v. State*, 956 A.2d 1242, 1245 (Del. 2008).

[30] Defense Ex. C. (email from the trial judge to the parties after learning of the conflict of interest informing the parties that he was open to hearing the parties' input on the matter).

[31] Transcript of Teleconference at 3.

Ms. Marvel next argues that the trial judge did not declare the mistrial out of manifest necessity because the trial judge learned this information before jeopardy attached. In furtherance of this argument, she points to three cases from various jurisdictions. In all three of these cases, the reviewing courts determined that the trial court's mistrial declaration was not out of manifest necessity because the information that led to the declaration was information possessed by the trial judges prior to jeopardy attaching.[32]

Ms. Marvel argues that these three cases persuasively provide that if a judge has knowledge of a potential conflict of interest prior to the start of trial, a subsequent mistrial declaration due to that conflict of interest cannot be a manifest necessity. Despite Ms. Marvel's contention, this Court will not adopt the rule that if a trial judge possesses information regarding a potential conflict of interest, a reviewing court is precluded from finding manifest necessity. While both *Buell* and *Mansfield* adopt such a rule,[33] this Court will not do so because the Delaware Supreme Court has warned against adopting any mechanical rule prohibiting a retrial.[34] If the Court were to accept the approach Ms. Marvel is advocating, it would impose a mechanical rule requiring a court to bar retrial any time a trial judge had information prior to jeopardy attaching that later led to the declaration of

---

[32] *United States v. Sartori*, 730 F.2d 973, 974–76 (4th Cir. 1984) (holding that where a trial judge had knowledge of a potential conflict and failed to recuse himself prior to jeopardy attaching, that conflict did not amount to a manifest necessity when the judge later declared a mistrial once jeopardy attached); *State v. Buell*, 605 A.2d 539, 541–43 (Conn. 1992) (holding that manifest necessity requires an element of surprise, and therefore, when the trial judge had knowledge of the conflict prior to jeopardy attaching, such information cannot later be the basis of a mistrial); *Mansfield v. State*, 29 A.3d 569, 582–83 (Md. 2011) (holding that the double jeopardy clause barred retrial because the trial judge declared a mistrial based on information she had prior to jeopardy attaching but failed to recuse herself).

[33] *Buell*, 605 A.2d at 543; *Mansfield*, 29 A.2d at 583.

[34] *See Bailey v. State*, 521 A.2d 1069, 1075 (Del. 1987) (stating that "[a] mechanical rule prohibiting retrial whenever circumstances compel the discharge of a jury without the defendant's consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide").

10

a mistrial. Such an approach is inappropriate in the mistrial context as a manifest necessity determination is a fact intensive inquiry where rigid rules such as the one proposed by Ms. Marvel are unhelpful.

Instead, the better approach is the one the Fourth Circuit Court of Appeals adopted in *United States v. Sartori*.[35] While Ms. Marvel cites to this case as adopting a bright line rule similar to that in *Buell* and *Mansfield*, that court merely held, that in the case at hand, the conflict of interest was not grave enough to warrant manifest necessity.[36] Therefore, this Court will follow the traditional approach of a case-by-case review to determine if the trial judge had a manifest necessity for the declaration in this case.

In making this determination it is important for the trial court to recognize that a defendant "has a valued right to have his trial completed by a particular tribunal."[37] Therefore, a trial judge should grant a mistrial, absent a defense motion, only under the most urgent circumstances.[38] However, while a trial court must recognize defendants' "valued right to have the trial completed by a particular tribunal," this right must, under some circumstances, "be subordinated to the public interest in fair trials designed to end in just judgments."[39] Moreover, the prosecution has the burden of demonstrating the existence of a manifest necessity, which requires a high degree of necessity before a retrial is permitted.[40]

---

[35] 730 F.2d 973 (4th Cir. 1984).

[36] *Id.* at 976. Instead of adopting a bright line rule, the court found a lack of manifest necessity because the appearance of impropriety was minimal given the trial judge's lack of an economic or other tangible interest in the trial's outcome. *Id.*

[37] *Arizona v. Washington*, 434 U.S. 497, 503 (1978).

[38] *Swanson v. State*, 956 A.2d 1242, 1245 (Del. 2008).

[39] *Bailey*, 521 A.2d at 1075 (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).

[40] *Washington*, 434 U.S. at 505. While the burden is on the prosecution to demonstrate manifest necessity, "[w]hen justice requires that a particular trial be discontinued [it] is a question that should be decided by persons conversant with factors relevant to the determination." *Wade*, 336 U.S. at 689. Therefore, a court reviewing this decision must be aware that the trial judge making

In the case at hand, the trial judge's order declaring a mistrial does not expressly find manifest necessity. However, this is not fatal.[41] Here, the facts support a finding of manifest necessity. The trial judge, after a full day of trial, learned that he had a personal relationship with Ms. Marvel's mother. It is clear from reviewing the relevant transcripts that the trial judge did not recognize who Ms. Marvel's mother was until after the start of trial. Due to his relationship with Ms. Marvel's mother, the trial judge determined that he could no longer proceed as the judge in this case due to a potential appearance of bias. The trial judge declared this mistrial only after a discussion with counsel where he was open to considering alternative solutions. As the parties and the trial judge were unable to offer an alternative course of action, the trial judge had no other choice but to declare a mistrial to avoid judicial impropriety. Avoiding judicial impropriety, which would have resulted had the trial judge continued with the case despite his acknowledged bias, is sufficient to meet the prosecution's burden of demonstrating manifest necessity. There is, of course, a strong public interest in fair trials designed to reach just judgments.

Moreover, this outcome would not change even if the Delaware courts were to adopt the rule advocated by Ms. Marvel because both *Mansfield* and *Buell* are distinguishable on the facts. Here, the State informed the trial judge the day before trial that the State had a concern about whether the trial judge had *worked* with Ms. Marvel's mother in 2015. The parties did not inform the trial judge of the mother's name. Furthermore, Ms. Marvel's mother informed the State's investigator that she worked for the Court at some unspecified time but did not work for the trial

---

this decision is in the best position to determine whether the facts amount to manifest necessity. However, at the same time, the trial judge's characterization is not binding. *United States v. Scott*, 437 U.S. 82, 96 (1978).

[41] *See Bailey*, 521 A.2d at 1077 (stating that "[t]he absence of an explicit finding of the 'manifest necessity' to declare a mistrial is not determinative").

judge. This disclosure obviously did not inform the trial judge of a potential conflict of interest due to his *social* relationship, as opposed to a non-existent work relationship, with Ms. Marvel's mother.

After the first day of trial, the trial judge then learned the identity of Ms. Marvel's mother. Upon learning her identity, the trial judge immediately informed counsel of the conflict of interest due to a social relationship. Therefore, even if the court were to adopt the rule advocated by Ms. Marvel and adopted in other jurisdictions, such a rule would not bar retrial here because the trial judge did not have knowledge of the conflict of interest that led to the mistrial declaration until after jeopardy had already attached.

Ms. Marvel also argues that negligence can negate a finding of manifest necessity when there is an alternative solution available. Ms. Marvel implies that the prosecutor or the trial judge did not properly address the conflict of interest prior to jeopardy attaching due to negligence. Ms. Marvel argues that had the conflict of interest been dealt with prior to the start of trial, the judge would have had the alternative solution of recusing himself. However, because of negligent actions, the conflict of interest was not properly addressed and the trial commenced leading to the mistrial. In support of this premise, Ms. Marvel relies on a Washington Court of Appeals case, *State v. Eldridge*.[42] In *Eldridge*, the court looked to *Downum* where the Supreme Court held that a decision by the prosecutor to proceed to trial despite knowing that a key witness was unavailable barred retrial.[43] While Ms. Marvel relies on *Eldridge* for the principle that negligence negates manifest necessity, the holding in *Eldridge* distinguished *Downum* and *Jorn* because unlike in those cases, the trial judge in *Eldridge* considered

---

[42] 562 P.2d 276 (Wash. Ct. App. 1977).
[43] *Id.* at 280–81.

alternative solutions before declaring a mistrial.[44]  Therefore, contrary to Ms. Marvel's argument, both *Eldridge* and *Downum* merely support the proposition that a trial judge must consider alternative solutions before declaring a mistrial, not that negligence negates a finding of manifest necessity.[45]  Therefore, *Eldridge's* holding, if found persuasive, does not change the outcome of this case.

Furthermore, despite the lack of support for this legal premise, there is no evidence that either the trial judge or the prosecutor acted negligently.  The prosecutor provided the Court with all the information available to her that she had collected following an investigation.  From the information provided to the Court prior to trial, the trial judge ascertained no conflict of interest.  Accordingly, it is not clear that either party acted negligently in this situation.

While the Court is satisfied that the trial judge declared a mistrial out of manifest necessity, this does not end the Court's inquiry.[46]  Despite a finding of manifest necessity, the double jeopardy provisions will bar a retrial where there were "governmental actions *intended* to provoke a mistrial and thereby subject the defendant to the substantial burdens imposed by multiple prosecutions."[47]  When a judge or prosecutor acts in bad faith "threaten[ing] the harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant," the double jeopardy clause will bar a retrial.[48]

Here, there is no evidence, and Ms. Marvel does not argue, that the State or the trial judge acted in bad faith with the intent to provoke a mistrial.  The State disclosed all information it possessed regarding a potential working relationship

---

[44] *Id.* at 281.
[45] *Id.*; *Downum v. United States*, 372 U.S. 734, 737 (1963).
[46] *Bailey,* 521 A.2d at 1078.
[47] *Id.*
[48] *Id.*

between the trial judge and Ms. Marvel's mother. After the trial judge reassured the parties that there was not a conflict of interest based on a work relationship, a bench trial began. After commencement of trial, as soon as the trial judge learned of the identity of Ms. Marvel's mother, he realized he had a personal relationship with her. There was no bad faith on either the part of the prosecutor or the trial judge. Therefore, the State is not barred from re-prosecuting the case on the grounds of alleged bad faith.

## CONCLUSION

For the reasons set forth herein, the Court declared a mistrial in Ms. Marvel's case out of manifest necessity to protect against judicial impropriety and to protect the public interest in fair trials designed to end in just judgments. Furthermore, the State is not barred from retrying its case against Ms. Marvel as there was no evidence of bad faith conduct on the part of either the State or the trial judge. Defendant Marvel's motion to dismiss is accordingly DENIED. Trial will commence as scheduled on Thursday, April 13, 2017.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Judge